UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RED RIVER BANCSHARES INC., RED RIVER BANK LSCB | CIVIL ACTION NO. 17-1370 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RED RIVER EMPLOYEES FEDERAL CREDIT UNION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Red River Employees Federal Credit Union ("Credit Union"). See Record Document 11. Plaintiffs Red River Bancshares, Inc., ("Bancshares") and Red River Bank, LSCB ("RRB") oppose the motion. See Record Document 14. For the reasons set forth below, the Credit Union's Rule 12(b)(6) Motion to Dismiss (Record Document 11) is hereby **DENIED**.

## BACKGROUND

Bancshares, and its licensee, RRB, are Louisiana entities engaged in banking and financial services throughout Louisiana. See Record Document 13 at ¶¶ 1-2, 7. Since 1999, Bancshares, through RRB, has used the service mark "RED RIVER BANK" in connection with its banking services. See id. at ¶ 8. As such, Bancshares and RRB assert that the name and service mark "Red River Bank" have become associated with Bancshares and RRB by consumers in Louisiana, especially in Caddo and Bossier Parish. See id. at ¶ 9.

Bancshares is the owner of United States Trademark No. 2,418,600 for "The Red River Logo" issued on January 9, 2001. See id. at ¶ 10, Ex. A. Bancshares is also the

owner of United States Trademark No. 4,586,878 for the mark "RED RIVER BANK" issued on August 19, 2014. See id. at ¶¶ 13-14, Ex. B. Bancshares also owns a Louisiana Trademark for "Red River Bank" and corresponding logo. See id. at ¶ 15, Ex. C.

The Credit Union traditionally provided credit union services in an around the Texarkana, Texas and Texarkana, Arkansas area, and did not provide services in Caddo or Bossier Parish, Louisiana. See id. at ¶¶ 16, 18. Around 2008, the Credit Union adopted the "Red River Credit Union" logo. See id. at ¶ 17. Prior to 2017, Plaintiffs and the Credit Union coexisted in their respective markets without confusion among their members, customers, or the general public. See id. at ¶ 21. However, on October 2, 2017, the Credit Union purchased branches from the now liquidated Shreveport Federal Credit Union, including branches in Caddo and Bossier Parish. See id. at ¶ 19. Since that time, the Credit Union has been operating branches in Caddo and Bossier Parish. See id. at ¶ 20. Plaintiffs allege that the Credit Union is targeting members and potential members in the same geographical areas served by RRB. See id. at ¶¶ 23-24. Plaintiffs claim that the Credit Union is aware of Bancshares and/or RRB's longstanding use of RED RIVER BANK in connection with banking services in Louisiana. See id. at ¶ 27.

Plaintiffs' Original Complaint asserted the following claims against the Credit Union: (1) trademark infringement under section 32 of the Lanham Act (15 U.S.C. § 1114), (2) unfair competition under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), (3) Louisiana trademark infringement under La. Rev. Stat. 51:211 *et seq.*, and (4) Louisiana unfair trade practices under the Louisiana Unfair Trade Practices Act

("LUTPA"), La. Rev. Stat. 51:1401 *et seq.* See Record Document 1. The Credit Union responded by filing a Motion to Dismiss. See Record Document 11. Therein, the Credit Union argued that Bancshares is the exclusive owner of the trademark in question, and that RRB, a mere licensee of Bancshares, lacks the standing to assert claims under the Lanham Act or Louisiana's Trademark infringement statue. See id. The Credit Union also argued that as a federally insured financial institution, it is exempt from LUTPA pursuant to La. Rev. Stat. 51:1406(1). See id.

Plaintiffs responded by filing an Amended Complaint that deletes their LUTPA claims. See Record Document 13 at ¶¶ 39-42.[1] The Amended Complaint also asserts that RRB is the "exclusive licensee" of Bancshares. See id. at ¶ 9. On the same day, Plaintiffs also filed an opposition to the Credit Union's Motion to Dismiss, arguing that as an exclusive licensee, RRB has standing to assert trademark claims. See Record Document 14. RRB also contends that as an exclusive licensee of Bancshares, it should be allowed to remain in the litigation as a permissive co-plaintiff pursuant to Fed. R. Civ. P. 20, or compulsory co-plaintiff pursuant to Fed. R. Civ. P. 19. See id. Plaintiffs conclude their opposition by requesting that the Court deny the Credit Union's motion to dismiss as moot. See id.

The Credit Union filed a reply brief, which significantly expands the legal arguments raised in the Motion to Dismiss. See Record Document 15. Therein, the Credit Union argues that its motion is not moot because the Amended Complaint contains the same defect – RRB's lack of standing. See id. at 3-7. Plaintiffs filed a sur-

---

[1] Pursuant to La. Rev. Stat. 51:1406(1), LUTPA does not apply to federally insured financial institutions. The Credit Union is federally insured. See Record Document 11, Ex. 1. Plaintiffs' LUTPA claims asserted in their Original Complaint are **DISMISSED WITH PREJUDICE**.

3

reply, which provides additional argument as to why RRB has standing to remain as a co-plaintiff. See Record Document 18 at 2-7. The Credit Union responded by filing a sur-sur-reply, which provides additional argument as to why RRB lacks standing, even as an exclusive licensee. See Record Document 23.

**LAW AND ANALYSIS**

**I.   Effect of Amended Complaint on Previously Filed Motion to Dismiss**

Amended pleadings generally supersede prior pleadings. See United States ex rel Curtin v. Barton Malow Co., No. 14-2584, 2017 WL 2453032, at *2 n. 5 (W.D. La. June 6, 2017). An Amended Complaint renders the Original Complaint of no legal effect unless the Original Complaint is specifically referenced or incorporated into the Amended Complaint. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). The appropriate course of action when a motion to dismiss is pending against a superseded complaint is to deny the motion as moot. See Garza-Selcer v. 1600 Pacific Subtenant, LLC, No. 15-3791, 2016 WL 11474103, at *2 (N.D. Tex. Aug. 30, 2016); Michael v. Boutwell, No. 14-0116, 2015 WL 728516, at *4-5 (N.D. Miss. Feb. 19, 2015). However, if a defect in a superseded pleading reappears in an amended pleading, the court may treat a previously filed motion to dismiss as if it is directed at the amended complaint. See Curtin, 2017 WL 2453032 at *2 n. 5.

In this instance, Plaintiffs' Amended Complaint deletes their LUTPA claims and changes RRB's relationship with Bancshares from a "licensee" to "exclusive licensee." See Record Documents 1 and 13. Otherwise, the Amended Complaint is substantially similar to the Original Complaint. The Amended Complaint does not incorporate the Original Complaint by reference. The Credit Union argues that the Amended Complaint

contains the same alleged defect regarding standing. See Record Document 15 at 2-3. The Court agrees, and will treat the motion as if directed at the Amended Complaint.

**II.     Rule 12(b)(6) Standard** [2]

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) changed from the old, more plaintiff-friendly "no set of facts" standard to a "plausibility" standard found in Bell Atlantic v. Twombly and its progeny. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-556, 127 S.Ct. at 1965. If a pleading only contains "labels and conclusions" and "formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Courts do not have to accept legal conclusions as facts. See id. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993).

"Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored." Rodriguez v. Rutter, 310 F. App'x. 623, 626 (5th Cir. 2009). However, Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow

---

[2] Dismissal for lack of statutory standing is properly granted under Rule 12(b)(6) rather than Rule 12(b)(1), which concerns constitutional standing. See Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n. 2 (5th Cir. 2011).

5

those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950.

**III.    RRB's Standing Under Section 32 of the Lanham Act**

As noted above, Bancshares claims that it "owns valid service mark rights in the name and mark RED RIVER BANK and The Red River Logo as evidenced by federal trademark registration numbers 2,418,600 and 4,586,878 (Exs. A and B)." See Record Document 13 at ¶ 29. The Credit Union argues that even if RRB is an "exclusive licensee" of Bancshares, RRB still lacks standing on its own to assert a claim for trademark infringement pursuant to 15 U.S.C. § 1114. See Record Document 15 at 4. The Credit Union seeks the dismissal of RRB's claim because it contends that only the registrant of RED RIVER BANK and The Red River Logo (i.e., Bancshares) may seek relief under 15 U.S.C. § 1114. See id.

Title 15, United States Code, Section 1114 provides in relevant part:

(1)    Any person who shall, without the consent of the registrant –

>   (a)  use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
>   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action *by the registrant* for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with

> knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

See 15 U.S.C. § 1114(1) (emphasis added). "The terms 'applicant' and 'registrant' embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant." See 15 U.S.C. § 1127.

A plaintiff has standing under Section 32 of the Lanham Act, 15 U.S.C. §1114, if "the plaintiff (1) owns the mark, (2) has been assigned the mark, or (3) possesses an exclusive license tantamount to an assignment." Neutron Depot, LLC v. Bankrate, Inc., No. 16-0901, 2017 WL 9538893, at *2 (W.D. Tex. Nov. 30, 2017) (citing Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits, Ltd., 726 F.3d 62, 73-74 (2d Cir. 2013)). Per the plain language of the statute, only the registrant or assignee may sue under Section 32(1) of the Lanham Act. See Finance Investment Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526, 531 (7th Cir. 1998). However, a truly exclusive licensee, one who has the right even to exclude his licensor from using the mark, may be equated to an assignee for standing purposes. See ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 598 (5th Cir. 2003). A licensing agreement that merely sets forth the rights and duties between the parties is insufficient to be equated with an assignment. See id.

Plaintiffs have asserted that RRB is the "exclusive licensee" of the mark owned by Bancshares. Thus, it is possible that RRB has standing to pursue its claim if the licensing agreement provides RRB with sufficient rights. Unfortunately, the licensing agreement was not attached to the Original or Amended Complaint. In examining a motion to dismiss, the Court may not look outside of the pleadings. See Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003) (noting one limited exception

not applicable in this case). The licensing agreement is a necessary document for the Court to determine whether RRB has standing as an exclusive licensee. The Court must examine the terms of the licensing agreement to determine its scope. Therefore, the Court believes the best course of action is to allow Plaintiffs to file a Second Amended Complaint with the licensing agreement attached. Because the Plaintiffs may choose to edit other portions of their Amended Complaint, the Court will not examine the remainder of the Credit Union's Motion to Dismiss in this ruling. Accordingly, the Credit Union's Motion to Dismiss must be **DENIED**.

## CONCLUSION

For the reasons assigned herein, the Credit Union's Motion to Dismiss (Record Document 11) is **DENIED**. Bancshares and RRB are hereby **ORDERED** to file a Second Amended Complaint with the licensing agreement attached within 28 days of the issuance of this ruling. The Credit Union is **GRANTED** an extension of time to file an Answer or another Motion to Dismiss within 21 days after Plaintiffs' Second Amended Complaint is filed. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of September, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT