UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RED RIVER BANCSHARES, INC., ET AL. | CIVIL ACTION NO. 17-1370 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RED RIVER EMPLOYEES FEDERAL CREDIT UNION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendant Red River Employees Federal Credit Union's ("Defendant") Motion to Dismiss[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). See Record Document 27. Plaintiffs Red River Bancshares, Inc. ("Bancshares") and Red River Bank, LSCB ("RRB") (collectively "Plaintiffs") oppose the motion. See Record Document 31. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Bancshares and its licensee, RRB, are Louisiana entities engaged in banking and financial services throughout Louisiana. See Record Document 26 at 1–2. Since 1999, Bancshares, through RRB, has used the service mark "RED RIVER BANK" in connection with its banking services. Id. at 2. As such, Bancshares and RRB assert that the name and service mark "Red River Bank" have become associated with Bancshares and RRB by consumers in Louisiana, especially in Caddo and Bossier Parish. Id.

---

[1] Although Defendant's Motion is titled as a "Motion to Dismiss," the Court notes that Defendant's Motion is a Partial Motion to Dismiss as it does not seek dismissal of Plaintiffs' action in its entirety.

Bancshares is the owner of United States Trademark No. 2,418,600 for "The Red River Logo" issued on January 9, 2001. Id. Bancshares is also the owner of United States Trademark No. 4,586,878 for the mark "RED RIVER BANK" issued on August 19, 2014. Id. at 2–3. Bancshares also owns a Louisiana Trademark for "Red River Bank" and corresponding logo. See id. at 3.

Defendant traditionally provided credit union services in and around the Texarkana, Texas and Texarkana, Arkansas areas and did not provide services in Caddo or Bossier Parish. See id. Around 2008, Defendant adopted the "Red River Credit Union" logo. Id. Prior to 2017, Plaintiffs and Defendant coexisted in their respective markets without confusion among their members, customers, or the general public. See id. However, on October 2, 2017, Defendant purchased branches from the now liquidated Shreveport Federal Credit Union, including branches in Caddo and Bossier Parish. See id. Since that time, Defendant has been operating branches in Caddo and Bossier Parish. See id. Plaintiffs allege that Defendant is targeting members and potential members in the same geographical areas served by RRB, and that Defendant is aware of Bancshares and/or RRB's longstanding use of RED RIVER BANK in connection with banking services in Louisiana. See id. at 4.

Plaintiffs' original complaint asserted the following claims against Defendant: (1) trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) Louisiana trademark infringement under Louisiana Revised Statutes Section 51:211 *et seq.*; and (4) Louisiana unfair trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401 *et seq.* See Record Document 1. Defendant responded by

filing a Motion to Dismiss. See Record Document 11. Therein, Defendant argued that Bancshares is the exclusive owner of the trademark in question and that RRB, a mere licensee of Bancshares, lacks standing to assert claims under either the Lanham Act or Louisiana's trademark infringement statute. See id. In addition, Defendant argued that as a federally insured financial institution, it is exempt from the LUTPA pursuant to Louisiana Revised Statutes Section 51:1406(1). See id.

Plaintiffs responded by filing an Amended Complaint that removed their LUTPA claims. See Record Document 13 at 6. Further, the Amended Complaint asserted that RRB is the "exclusive licensee" of Bancshares. Id. at 2. On the same day, Plaintiffs also filed an opposition to Defendant's Motion to Dismiss, arguing that as an exclusive licensee, RRB has standing to assert trademark claims. See Record Document 14 at 1. RRB also contends that as an exclusive licensee of Bancshares, it should be allowed to remain in the litigation as a co-plaintiff with Bancshares. See id.

Thereafter, Defendant filed a reply brief asserting that its Motion to Dismiss was not moot because the Amended Complaint contained the same defect as the original complaint—RRB's lack of standing. See Record Document 15 at 3. In the Court's previous Memorandum Ruling regarding this motion, the Court denied the Motion to Dismiss and ordered Plaintiffs to file a Second Amended Complaint with the licensing agreement attached in order for the Court to determine whether RRB has standing as an "exclusive licensee." Record Document 24 at 8. Plaintiffs later complied with this order by filing its Second Amended Complaint with the agreement attached, see Record Document 26, after which Defendant refiled its Motion to Dismiss, see Record Document 27.

On March 12, 2019, after granting an unopposed Motion for Oral Argument filed by Plaintiffs, the Court held a motion hearing on Defendant's Motion to Dismiss regarding several issues raised in the parties' briefing. See Record Document 34 at 1; see also Record Document 35.[2]

## II.  LAW AND ANALYSIS

### A.  Pleading and 12(b)(6) Motion to Dismiss Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted.[3] In deciding a Rule 12(b)(6) motion to dismiss, a court generally may not "go outside the pleadings."

---

[2] The Court notes that the parties' additional arguments made during the hearing have been considered for purposes of the instant ruling.

[3] Dismissal for lack of statutory standing is properly granted under Rule 12(b)(6) rather than Rule 12(b)(1), which concerns constitutional standing. See Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id.

A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

### B. Whether RRB has Standing Under Section 32 of the Lanham Act (15 U.S.C. § 1114) and Louisiana Revised Statutes Section 51:211

Although Defendant asserts that RRB lacks standing for all of its claims asserted in the Second Amended Complaint, the Court first addresses whether RRB has standing to sue for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.[4]

---

[4] Further, both parties agree that the claim asserted under Count Three in the Second Amended Complaint for Louisiana Trademark Infringement, La. R.S. 51:211 *et seq.*, is modeled after Section 1114 and thus the Court's ruling as to RRB's standing under Section 1114 should apply equally with respect to RRB's standing under Louisiana Revised Statutes Section 51:211. See Record Document 27-1 at 18.

A plaintiff has standing under Section 1114 if "[it] (1) owns the mark, (2) has been assigned the mark, or (3) possesses an exclusive license tantamount to an assignment." Neutron Depot, LLC v. Bankrate, Inc., No. 16-0901, 2017 WL 9538893, at *2 (W.D. Tex. Nov. 30, 2017) (citing Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, Ltd., 726 F.3d 62, 73–74 (2d Cir. 2013)). Per the plain language of the statute, only the registrant or assignee may sue under Section 32(1) of the Lanham Act. See Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526, 531 (7th Cir. 1998). However, a truly exclusive licensee, one who has the right even to exclude his licensor from using the mark, may be equated to an assignee for standing purposes. See ICEE Distribs. v. J&J Snack Foods Corp., 325 F.3d 586, 598 (5th Cir. 2003). A licensing agreement that merely sets forth the rights and duties between the parties is insufficient to be equated with an assignment. See id.

In this case, after reviewing the parties' licensing agreement, it is clear to the Court that the agreement does not amount to an actual assignment of the trademarks at issue. Defendant cites several of the agreement's provisions showing that Bancshares did not grant full rights to its trademarks and, in fact, retained control over various aspects of the marks, thereby preventing the agreement from qualifying as a full "assignment" of the marks and all rights attached to them. See Record Document 27-1 at 16 (noting, *inter alia*, that the license is limited to a term and that Bancshares, as licensor, can terminate the license without cause by written notice (Section B), that the use license provided to RRB is expressly limited to specifically defined banking services (Section D), and that Bancshares retains quality control over the services to be provided by RRB under the marks (Section G) (citing Record Document 26-1 at 6–7))). Because the agreement reserves to Bancshares "certain rights indicative of ownership, such as [the] ability to

monitor the quality control" of RRB's services under the marks, the Court finds that the agreement is an exclusive license arrangement only and does not constitute an assignment. ICEE Distribs., 325 F.3d at 599.

Plaintiffs' remaining arguments regarding this issue are not persuasive. Despite their admission that RRB lacks standing to pursue a claim under Section 1114 alone, see Record Document 31 at 9, Plaintiffs essentially argue that RRB should nevertheless be allowed to sue and establish standing as a co-plaintiff vis-à-vis the standing of Bancshares, see id. However, "[p]er the plain language of the statute, only the registrant or assignee may sue under Section 32(1) of the Lanham Act." Record Document 24 at 7. Therefore, because RRB is neither the registrant nor the assignee of the trademark, the Court finds that RRB lacks standing to sue under Section 1114 for trademark infringement, either by itself or as co-plaintiff with Bancshares. Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to RRB's claims pursuant to Section 1114 and Louisiana Revised Statutes Section 51:211; thus, said claims are hereby **DISMISSED WITH PREJUDICE**.

### C. Whether Plaintiffs have Standing Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

The Court next addresses Defendant's argument that neither RRB nor Bancshares has statutory standing to sue under Section 1125(a). See Record Document 27-1 at 5. While the parties divide their memoranda to separately address standing under Section 1125(a) for RRB and Bancshares, the Court addresses this issue for both plaintiffs simultaneously for purposes of the instant ruling.

Section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control

Components, Inc., 572 U.S. 118, 122, 134 S. Ct. 1377, 1384 (2014). Here, Plaintiffs have asserted false association claims. See Record Document 31 at 20, 24. Additionally, unlike claims under Section 1114 for trademark infringement, Section 1125(a) does not require a false association plaintiff to establish ownership of a trademark as an element of its cause of action. See, e.g., Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016), cert. denied, 137 S. Ct. 1202 (2017). Thus, an exclusive licensee, like RRB, has standing to sue by itself under Section 1125(a).

Furthermore, in addition to Article III standing, a plaintiff asserting a violation of the Lanham Act must satisfy the requirements for statutory, or "prudential," standing, set forth in Lexmark, 572 U.S. 118, 134 S. Ct. 1377. There, the Supreme Court stated that the plaintiff must show, first, that its injuries "fall within the zone of interests protected by the law invoked[]" and, second, that such injuries were "proximately caused by violations of the statute." Id. at 129, 132, 134 S. Ct. at 1388, 1390. Further, while the "zone of interests" inquiry originated in the context of the Administrative Procedure Act, this test, in addition to the proximate causation requirement, now applies to all statutorily created causes of action "unless it is expressly negated." Id.; see id. at 130, 134 S. Ct. at 1389 n.5.

Regarding the interests protected by the Lanham Act, the Act itself contains a statement listing the statute's purposes in Section 1127. This provision states that the intent of the Lanham Act is to, among other things:

> "regulate commerce . . . by making actionable the deceptive and misleading use of marks in such commerce; . . . to protect persons engaged in such commerce against unfair competition; [and] to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks[.] . . . ."

Id.

In the instant matter, both parties appear to agree that, generally, both the licensor/owner and its exclusive licensee can each individually bring claims under Section 1125(a). See Record Document 32 at 9.[5] Additionally, neither party disputes that Lexmark's standing requirements apply to Plaintiffs' false association claims. See Record Document 31 at 20. What the parties do contest, however, is whether the analysis differs in this case due to Lexmark having only involved a false advertising claim, which is not present here. See id.; see also Record Document 32 at 10. In Lexmark, the Court noted that most of the purposes stated in Section 1127 of the Lanham Act are relevant to false association cases, but that "a typical false-advertising case will implicate only the Act's goal of protecting persons engaged in commerce . . . against unfair competition." Lexmark, 572 U.S. at 131, 134 S. Ct. at 1389. The Court went on to hold, first, that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales," id. at 131–32, 134 S. Ct. at 1390 (emphasis added), and, second, "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," id. at 133, 134 S. Ct. at 1391 (emphasis added).

Defendant argues that Plaintiffs have not established standing for their Section 1125(a) claim because they fail to allege facts regarding any "injuries to a commercial interest in sales or business reputation." Record Document 27-1 at 28 (citing Lexmark,

---

[5] Defendant appears to have abandoned an earlier argument it made that Bancshares, the actual owner/registrant of the trademarks, lacks standing to sue for claims under Section 1125(a) because that section allegedly applies only to "non-owners" of trademarks. See Record Document 27-1 at 22. However, after Plaintiffs cited several cases to the contrary, Defendant did not further brief this issue in its reply memorandum. See Record Document 32 at 9; see also Marathon Mfg. Co. v. Enerlite Prod. Corp., 767 F.2d 214, 216 (5th Cir. 1985). Therefore, this argument is waived.

572 U.S. at 131–32, 134 S. Ct. at 1390). Plaintiffs respond that Lexmark only adopted this requirement for false advertising claims and not false association claims, which they maintain implicate other interests such as preventing consumer confusion regarding their trademarks. See Record Document 31 at 21. Furthermore, Plaintiffs argue that they have alleged facts showing an ownership interest in the trademarks and that Defendant's use of the marks is likely to cause confusion among consumers, thereby satisfying the proximate cause requirement as well. See id. at 20; see Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008).

In this case, the Court finds that Plaintiffs' allegations in the Second Amended Complaint are sufficient to establish standing for their false association claims pursuant to Section 1125(a)(1)(A). At the outset, the Court notes that the issue in dispute turns on the interpretation of Lexmark and its application to false association claims, an issue the Lexmark Court did not address. The Court also notes that only a small number of cases have addressed the specific issue of Lexmark's standing requirements as applied to false association claims, the majority of which do not address the issue in depth. In addition, notwithstanding Defendant's assertions to the contrary, see Record Document 32 at 10, several courts confronted with this issue have declined to hold that the Lexmark analysis applies to false association claims in the exact manner it applied to the false advertising claims at issue in that case. See Lancaster v. Bottle Club, LLC, No. 17-0634, 2018 WL 2151729, at *4, *7 (M.D. Fla. May 10, 2018); Reynolds Consumer Prods., Inc. v. Handi-Foil Corp., No. 13-0214, 2014 WL 3615853, at *2 (E.D. Va. July 18, 2014); see also Peter Kiewit Sons', Inc. v. Wall Street Equity Grp., Inc., No. 10-0365, 2014 WL 4843674, at *5

n.5 (D. Neb. Sept. 29, 2014). But see Lundgren v. Ameristar Credit Sols., Inc., 40 F. Supp. 3d 543, 551 n.4 (W.D. Pa. 2014).

Furthermore, the Court agrees with Plaintiffs' argument that false association claims, while indeed subject to Lexmark's zone of interests and proximate causation requirements, implicate other Lanham Act interests different from those relevant to false advertising claims such that the manner in which Lexmark's analysis applies will differ as well. First, as noted above, the Lexmark Court was clear in distinguishing these two causes of action when it stated that unlike false association claims, which concern the majority of the Lanham Act's interests, false advertising claims "will implicate only the Act's goal of protecting persons engaged in commerce . . . against unfair competition." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131, 134 S. Ct. 1377, 1389 (2014). Moreover, while portions of the Court's opinion in Lexmark make general references to "Section 1125(a)" as a whole, as opposed to the specific subsection for either claim, the Court's focus on "advertising" as the relevant conduct in its analysis further suggests that it only adopted the "injury to commercial interest in reputation or sales" requirement in the context of false advertising claims. Id. at 133, 134 S. Ct. at 1391 (stating that the plaintiff's injury must be shown to "flow[] directly from the deception wrought by the defendant's advertising") (emphasis added).

Lastly, the Court notes that it has long been established by the case law that the elements for a trademark infringement claim under Section 1114 are identical to those for a false association claim under Section 1125(a)(1)(A). See, e.g., Marathon Mfg. Co. v. Enerlite Prod. Corp., 767 F.2d 214, 217 (5th Cir. 1985). Specifically, the elements for both claims require a plaintiff to (1) establish ownership in a legally protectible mark and (2)

show infringement by demonstrating a likelihood of confusion. See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008). Here, both Plaintiffs (Bancshares, as the owner, and RRB, as its exclusive licensee) have alleged ownership in the Red River trademarks and, further, that Defendant's misleading use of the marks regarding its credit union services is likely to cause confusion or mistake among consumers within the parties' overlapping market area. See Record Document 26 at 5. Because nothing further is required, the Court finds that Plaintiffs' allegations in the Second Amended Complaint are sufficient to establish standing for their false association claims under Lexmark. Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Bancshares and RRB's claims pursuant to Section 1125(a)(1)(A).

### III. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss (Record Document 27) is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion to Dismiss is **GRANTED** as to RRB's claims pursuant to Section 1114 and Louisiana Revised Statutes Section 51:211; thus, said claims are hereby **DISMISSED WITH PREJUDICE**. However, Defendant's Motion to Dismiss is **DENIED** as to Bancshares and RRB's claims pursuant to Section 1125(a)(1)(A).

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of September, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT