UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RED RIVER BANCSHARES, INC., ET AL. | CIVIL ACTION NO. 17-1370 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RED RIVER EMPLOYEES FEDERAL CREDIT UNION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are pending motions filed by the parties pursuant to Federal Rule of Civil Procedure 56: (1) Defendant Red River Employees Federal Credit Union's ("Defendant") Motion for Partial Summary Judgment (Record Document 47); and (2) Plaintiffs Red River Bancshares, Inc. and Red River Bank, LSCB's (collectively "Plaintiffs") Motion for Partial Summary Judgment (Record Document 52). For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** and Defendant's Motion for Partial Summary Judgment is **DENIED**.

### I. BACKGROUND

Bancshares and its licensee, RRB, are Louisiana entities engaged in banking and financial services throughout Louisiana. See Record Document 52-2 at 7–8. Since 1999, Bancshares, through RRB, has used the service mark "RED RIVER BANK" in connection with its banking services. Id. at 7. As such, Bancshares and RRB assert that the name and service mark "Red River Bank" have become associated with Bancshares and RRB by consumers in Louisiana, especially in Caddo and Bossier Parishes. See Record Document 26 at 2.

Bancshares is the owner of United States Trademark No. 2,418,600 for "The Red River Logo" issued on January 9, 2001. See Record Document 52-1 at 2; Record Document 61-1 at 3. Bancshares is also the owner of United States Trademark No. 4,586,878 for the mark "RED RIVER BANK" issued on August 19, 2014. Record Document 26 at 2–3. Bancshares also owns a Louisiana Trademark for "Red River Bank" and corresponding logo. See id. at 3.

Defendant traditionally provided credit union services in and around the Texarkana, Texas and Texarkana, Arkansas areas and did not operate any branches in Louisiana. See Record Document 61-1 at 4. Around 2008, Defendant adopted the "Red River Credit Union" logo. Record Document 52-1 at 3. Prior to 2017, Plaintiffs and Defendant coexisted in their respective markets without confusion among their members, customers, or the general public. See id. at 6. However, on October 2, 2017, Defendant purchased branches from the now liquidated Shreveport Federal Credit Union, including branches in Caddo and Bossier Parishes. See id. at 4. Since that time, Defendant has been operating branches in Caddo and Bossier Parishes. See id. Plaintiffs allege that Defendant is targeting members and potential members in the same geographical areas served by RRB, and that Defendant is aware of Bancshares and/or RRB's longstanding use of RED RIVER BANK in connection with banking services in Louisiana. See, e.g., Record Document 26 at 4.

Plaintiffs' original complaint asserted the following claims against Defendant: (1) trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) Louisiana trademark infringement under Louisiana Revised Statutes Section 51:211 *et seq.*; and (4)

Louisiana unfair trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401 et seq. See Record Document 1. Defendant responded by filing a Motion to Dismiss. See Record Document 11. Therein, Defendant argued that Bancshares is the exclusive owner of the trademark in question and that RRB, a mere licensee of Bancshares, lacks standing to assert claims under either the Lanham Act or Louisiana's trademark infringement statute. See id. In addition, Defendant argued that as a federally insured financial institution, it is exempt from the LUTPA pursuant to Louisiana Revised Statutes Section 51:1406(1). See id.

Plaintiffs responded by filing an Amended Complaint that removed their LUTPA claims. See Record Document 13 at 6. Further, the Amended Complaint asserted that RRB is the "exclusive licensee" of Bancshares. Id. at 2. On the same day, Plaintiffs also filed an opposition to Defendant's Motion to Dismiss, arguing that as an exclusive licensee, RRB has standing to assert trademark claims. See Record Document 14 at 1. RRB also maintained that as an exclusive licensee of Bancshares, it should be allowed to remain in the litigation as a co-plaintiff with Bancshares. See id. Thereafter, Defendant filed a reply brief asserting that its Motion to Dismiss was not moot because the Amended Complaint contained the same defect as the original complaint—RRB's lack of standing. See Record Document 15 at 3. In the Court's previous Memorandum Ruling regarding this motion, the Court denied the Motion to Dismiss and ordered Plaintiffs to file a Second Amended Complaint with the licensing agreement attached in order for the Court to determine whether RRB has standing as an "exclusive licensee." Record Document 24 at 8. Plaintiffs later complied with this order by filing its Second Amended Complaint with

the agreement attached, after which Defendant refiled its Motion to Dismiss. See Record Documents 26 and 27.

On March 12, 2019, the Court held oral argument on Defendant's Motion to Dismiss regarding several issues raised in the parties' briefing. See Record Document 34 at 1; see also Record Document 35. On September 26, 2019, the Court granted in part and denied in part Defendant's Motion to Dismiss, which dismissed RRB's claims pursuant to Section 1114 and Louisiana Revised Statutes Section 51:211. See Record Document 36 at 12. Subsequently, both parties filed the instant Motions for Partial Summary Judgment that are now pending before the Court. Therein, Defendant seeks dismissal of all of Plaintiffs' claims relating to Defendant's use of its word mark RED RIVER CREDIT UNION in Caddo and Bossier Parishes. See Record Document 47 at 1. Additionally, Plaintiffs seek dismissal of Defendant's affirmative defense of prior use. See Record Document 52 at 1.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Geoscan, Inc. of Texas v. Geotrace Techs., Inc., 226 F.3d 387, 390 (5th Cir. 2000). During this stage, courts must look to the substantive law underlying the lawsuit in order

to identify which facts are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof [at trial]." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). The court should not, however, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Classification of Defendant's Marks

In order to address the parties' arguments regarding Defendant's prior use defense, the Court must first classify Defendant's marks. The primary issue in dispute is the classification of Defendant's RED RIVER CREDIT UNION mark. Trademarks can generally be divided into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary/fanciful. See Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex., 909 F.2d 839, 844–45 (5th Cir. 1990). Generic terms are never eligible for trademark protection. Descriptive terms may be protected but only if secondary meaning[1] is established. See id. at 847. Conversely, suggestive, arbitrary and fanciful marks are all protectable without proof of secondary meaning. See id. at 844.

"A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 539 (5th Cir. 2015) (quoting Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 241 (5th Cir. 2010)). "Geographical terms such as 'Texas,' 'Midwest,' 'Madison Avenue,' or 'Philadelphia' are also considered descriptive terms when they describe where the products or services are offered or manufactured." Union Nat. Bank, 909 F.2d at 845. In contrast, a suggestive term "suggests, rather than describes, some characteristic of the goods to which it . . . applie[s] and requires the consumer to exercise his imagination" to reach a conclusion as to their nature. Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1184 (5th Cir. 1980) (quotations omitted).

In the instant case, the Court finds that RED RIVER CREDIT UNION is clearly a geographically descriptive mark. First, at the outset, the Court notes that the term,

---

[1] This requirement is further discussed below, infra.

CREDIT UNION, is the generic portion of the mark as it merely refers to the general type of services offered by Defendant. The more relevant term, RED RIVER, is geographically descriptive as it describes the primary market or region in which Defendant operates and provides its services. Indeed, the Red River is a central geographic feature of both the Texarkana region, which is Defendant's original and primary market area, as well as the Caddo/Bossier Parish market area in which Defendant now operates as well. See, e.g., Record Document 52-2 at 12.

Additionally, the Court rejects Defendant's argument that RED RIVER CREDIT UNION is not a geographically descriptive mark and instead qualifies as a suggestive mark because "[it] only suggests [Defendant's] historical affiliation and association with the Red River Army Depot[] as the historical source of [Defendant's] services." Record Document 61 at 10. Even if the Court accepted Defendant's assertions as true, the name would still constitute a descriptive mark as it would simply describe a characteristic of the service, i.e., its historical association with the Red River Army Depot, rather than where the service is provided. Because secondary meaning is required for protection of both descriptive and geographically descriptive terms, see Union Nat. Bank, 909 F.2d at 844, Defendant must establish secondary meaning in order for its marks to be protected. This issue is further addressed below.

### C. Prior Use Defense

The Court proceeds to address the parties' arguments regarding Defendant's prior use defense. This defense is contained in Section 15 of the Lanham Act, which provides as follows:

> Except . . . to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State

>or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, . . . .

15 U.S.C. § 1065. In order to prevail on this affirmative defense, Defendant must show either that its marks acquired secondary meaning in Caddo and Bossier Parishes prior to 2001, or that Caddo and Bossier Parishes were within Defendant's "zone of natural expansion," again prior to 2001. See Record Document 52-2 at 11.[2]

"Secondary meaning," which refers to when a descriptive mark will acquire trademark rights, occurs when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211, 120 S. Ct. 1339, 1343 (2000). For geographically descriptive marks, the senior user's rights extend only to those areas in which its mark has acquired secondary meaning before the junior user began using the mark. See Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 94-2203 (La. 4/10/95), 652 So. 2d 1306, 1322 n.13. The burden to establish secondary meaning, which lies with the party asserting rights in the mark, is substantial and requires a high degree of proof. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 567 (5th Cir. 2005). Proof of secondary meaning may consist of direct evidence, such as testimony from individual consumers, surveys, and proof of actual instances of confusion, or indirect evidence, such as the volume of business done under the name, the length of time the designation has been in use, advertising and promotional efforts, and the conspicuousness of the designation. See Gulf Coast Bank, 652 So. 2d at 1314; see also Viacom Int'l v. IJR Capital

---

[2] This is so because one of the effects of Plaintiffs' 2001 federal registration is to freeze the trade territory of the senior user to what the senior user had reached at the time of said registration. See Tana v. Dantanna's, 611 F.3d 767, 780–81 (11th Cir. 2010); see also Record Document 52-1 at 2.

Page **8** of **12**

Investments, L.L.C., 891 F.3d 178, 190 (5th Cir. 2018) (listing similar factors considered for analysis). Several factors in combination may show that a mark has developed secondary meaning "even if each factor alone would not." Viacom, 891 F.3d at 190.

In the instant matter, the Court finds that Defendant's evidence is insufficient to raise a genuine dispute of material fact as to whether its marks acquired secondary meaning in Caddo and Bossier Parishes prior to 2001. First, the record contains deposition testimony from several individuals within Shreveport's financial services industry, including current and former employees of Defendant, who stated that they had never heard of Defendant prior to its purchase of Shreveport Federal Credit Union in 2017. See Record Document 52-2 at 23 (citing Record Documents 52-10 at 4, 52-11 at 4, and 52-12 at 4–5). Plaintiffs cite these statements as evidence of Defendant's lack of reputation in the Caddo/Bossier Parish market prior to 2017. See id. Plaintiffs further maintain that the absence of any confusion between the parties prior to 2017 "is strong direct evidence that [Defendant] did not have secondary meaning in Caddo and Bossier by 2001." Record Document 59 at 23. While not dispositive of this issue, the Court finds that such evidence is, at the very least, a relevant factor that weighs against a finding of secondary meaning as it relates to Defendant's reputation and market presence *vel non* in Caddo and Bossier Parishes prior to 2001.

Further weighing against a finding of secondary meaning in Defendant's marks is additional evidence in the record pertaining to Defendant's advertising and promotional efforts, as well as its volume of sales, in Caddo and Bossier Parishes prior to 2001. For example, Defendant relies on declarations it submitted from various individuals, primarily its own employees, who assert that Defendant began advertising on multiple radio

stations and television channels that "actively and continuously" broadcasted its advertisements throughout Caddo and Bossier Parish as early as 1987. See Record Document 61 at 17. However, the Court finds that these statements, by themselves, operate as nothing more than self-serving, conclusory assertions that are insufficient to establish secondary meaning in Defendant's marks. Further, Defendant has failed to submit any other evidence as to the content, frequency, or overall effect of said advertisements on consumers in the market that would support a finding of secondary meaning by this Court. See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 545 (5th Cir. 2015) (noting that the "probative value of advertising depends on the presence of data regarding its reach, frequency, and duration").

In addition, the evidence submitted by Defendant regarding its volume of business, i.e., the number of credit union members in the Caddo/Bossier Parish market prior to 2001, is likewise scant. While Defendant states that it had 230 members in Caddo and Bossier Parish in 2000, the record also shows that there were approximately 350,000 people in Caddo and Bossier Parish the same year. See Record Document 52-1 at 5. Thus, that Defendant had such a minor share of the market prior to 2001 only further weakens Defendant's position. In sum, for this reason and those stated above, the Court finds that Defendant's evidence is legally insufficient to satisfy its burden in showing that its marks acquired secondary meaning in the Caddo/Bossier Parish market prior to 2001.

The Court also addresses the parties' arguments as to whether Caddo and Bossier Parishes were within Defendant's "zone of natural expansion" prior to 2001. This doctrine is an exception to the general rule that a senior user's trademark rights may not extend to areas that neither his use nor reputation has reached by providing him some limited

"breathing space" for expansion beyond actual use. See Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1027–28 (11th Cir. 1989). However, courts tend to define this zone very narrowly and, in most cases, have rejected application of the doctrine on the facts. See id. at 1028. While it appears that no Louisiana or Fifth Circuit court has expressly set forth the factors to be considered for this analysis, some of the factors courts consider include geographical proximity, the senior user's market penetration, the senior user's past expansion history, and the expansion plans of the senior user at the time of the junior user's first use of the mark. See id.; Popular Bank of Fla. v. Banco Popular de Puerto Rico, 9 F. Supp. 2d 1347, 1356 (S.D. Fla. 1998).[3]

Here, the Court need not address this issue in depth because it is clear from the record that Defendant's zone of natural expansion did not encompass Caddo and Bossier Parishes prior to 2001. First, Defendant's past expansion history shows that any expansion into Louisiana in 2001 was unlikely given that Defendant, which was founded in 1943, did not have a branch anywhere in Louisiana until 2017. Additionally, the only evidence Defendant has offered regarding any plans to expand into Louisiana prior to 2001 is the declaration of its current president, who stated that "as early as 1989, [Defendant] has fully intended and planned to open branch locations in Shreveport, Louisiana, and has actively pursued the best opportunity to do so." Record Document 59 at 35. However, as stated above, such conclusory assertions from its own employees, without any further evidence in support, is likewise insufficient to preclude summary judgment as to this issue as well. See Blue Ribbon Feed Co., Inc. v. Farmers Union Cent.

---

[3] Because the Court finds that Defendant cannot prevail on its prior use defense, the Court need not address the issue of whether Defendant can "tack" the use of earlier versions of its marks.

Exchange, Inc., 731 F.2d 415, 423 (7th Cir. 1984) (stating that a party's "mere hope of expansion beyond its proven trade area is insufficient" to establish rights under the zone of natural expansion doctrine).

### III.     CONCLUSION

Accordingly, based on the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Record Document 52) is **GRANTED** and Defendant's Motion for Partial Summary Judgment (Record Document 47) is **DENIED**. Therefore, Defendant's prior use defense is hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of August, 2020.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT